220 P.2d 709

## LORD v. CITY OF SANTA FE et al.
### No. 5202.

Supreme Court of New Mexico.

July 12, 1950.

------◆------

L. C. White, Santa Fe, for appellant City of Santa Fe.

M. W. Hamilton, Santa Fe, for appellant on rehearing.

Caswell S. Neal, Carlsbad, amicus curiæ, for appellant on rehearing.

Watson, McIntosh & Watson, Santa Fe, for appellee.

PER CURIAM.

Upon motion for rehearing in the above cause the opinion of the Court heretofore handed down is withdrawn and the following substituted:

COMPTON, Justice.

Appellee (plaintiff), the administrator d. b. n. of the estate of Neil P. Renehan, deceased, filed his complaint against defendants City of Santa Fe, a municipal corporation, Jane L. Renehan, and Vivian Sloan Fiske, in the district court of Santa Fe County, as provided by Sec. 33-715, N. M.Sts. 1941, for authority to sell certain described real estate, which, it is alleged, belonged to the decedent at the time of his death, the proceeds to be used to pay debts of decedent; it appearing that the personal property of the estate was insufficient to pay his debts.

The statutes of New Mexico, Secs. 33-714 to 33-730, inclusive, N.M.Sts. 1941, provide for the sale, mortgage or lease of the real property of a decedent for the payment of his debts, provided the personal property is insufficient therefor. A proceeding is started, as in this case, by the executor or administrator of an estate of a decedent, filing his petition in the district court, showing that resort must be had to the real estate for the purpose of paying decedent's debts, and praying for its sale for that purpose. It is unnecessary to set out in full any of these statutes, but this action was brought by authority thereof, and the correctness of the proceedings is not questioned.

The appellant City of Sante Fe (hereinafter called appellant) filed its answer claiming title to the property. The other defendants did not appear in the district court, and did not join in this appeal. The defendant Renehan was made a party because she was the heir, and only heir at law, of the decedent to whom his real property descended, if in fact it was owned by the decedent at the time of his death. The defendant Fiske was made a party because she was the wife of the deceased at the time the warranty deed was executed conveying the property in question to the ap-

pellant, City of Santa Fe, and was a grantor therein.

The findings of fact made by the Court are in substance as follows:

(1) That the plaintiff is the duly appointed, qualified and acting administrator de bonis non of Neil P. Renehan, deceased.

(3) That on the 2nd day of July, 1941, Neil P. Renehan and his then wife, defendant Vivian Sloan Renehan, did make and execute a certain warranty deed to the City of Santa Fe of the following described real estate, to-wit (here follows description of the real estate involved).

That the conveyance was made to the City of Santa Fe as a gift or donation, and without payment by it of any money consideration. That the real estate was to be used for a specific purpose, to-wit, a site for a Forest Service warehouse and was conveyed for said specific purpose. That the plaintiff and defendant Jane L. Renehan are the successors in interest of the donors of said property.

(7) That the warranty deed from Neil P. Renehan and Vivian Sloan Renehan, his wife, to defendant City of Santa Fe, of the property described in the complaint, was on a printed form at the top of which were printed the words "Warranty Deed,— Santa Fe County Standard Form." This deed recited in part, as follows: "Witnesseth; that the said parties of the first part, for and in consideration of the sum of Ten Dollars and other good and valuable considerations Dollars currency of the United States, to them in hand paid by the said party of the second part, the receipt whereof is hereby confessed and acknowledged, and the said party of the second part, forever released and discharged therefrom."

(8) That the warranty deed conveying the property described in the complaint contains no conditional nor restrictive covenants as to the use of the property, nor any reversionary interest in the grantors, nor any provisions for forfeiture.

(9) That it is established by the evidence that the grantee, prior to and at the time of the delivery of the deed in question, had the intention of reconveying the property to the United States Government to be used by it as a site for a Forest Service warehouse, and the said City of Santa Fe did in fact convey said property to the United States Government who refused to accept the same upon the ground that the defendant municipality had no authority by law to make such a conveyance, and such attempted conveyance was therefore illegal.

(10) That the parol agreement as claimed by the plaintiff relates directly to the subject matter of the written contract, the warranty deed.

Upon these findings judgment was entered for appellee.

The trial court's findings to the effect that the conveyance from Renehan and his then wife to the City of Sante Fe was made as a gift or donation for a specific purpose, "all as contemplated by Sec. 1, Ch. 123, N. M.Laws 1947, Sec. 75-124, N.M.Sts. 1941"; that it belonged to the decedent at the time of his death by the terms of the statute last mentioned; that the property should be sold and the proceeds first applied to the payment of the debts of the decedent, and the remainder distributed to his heirs, are attacked upon the ground (as it is said) that they are not supported by substantial evidence.

The appellant made numerous assignments of error, all except one of which violated the rules of appellate procedure of this Court, in much the same way as appears in Lea County Fair Ass'n v. Elkan, 52 N.M. 250, 197 P.2d 228. Also see Robinson v. Mittry Bros., 43 N.M. 357, 94 P. 2d 99; Parnell v. Breece, 53 N.M. 351, 208 P.2d 473. We have often called attention of the bar to the violations of these rules, and particularly to those having reference to assignments of error. See the above cases. Only one of appellant's assignments complies with the rules and it alone will be considered here. It is as follows: "2. The lower court erred in giving Finding of Fact No. 3 (T. pp. 28 and 29) in that 'said conveyance was made as a gift or donation and without payment by said municipality of any money consideration, and that said real estate was to be used for a specific purpose, to-wit, a site for a Forest Service warehouse and was conveyed for said purpose.'"

If the real property in question belonged to decedent at the time of his death, the court was correct in ordering its sale and the application of its proceeds to the payment of his debts; otherwise the judgment should be reversed.

As the documentary evidence showed the deceased and his then wife conveyed the property in question to the appellant by warranty deed with a recited consideration of $10, unless there is substantial evidence in the record supporting the court's finding of fact No. 3, the judgment should be reversed, as the deed mentioned is at least prima facie evidence of title in the City of Santa Fe.

The appellee claims title by reverter under the following statute: Sec. 75-124, N. M.Sts. 1941. "Whenever real estate has been deeded to the state of New Mexico or any municipality thereof as a gift or donation, and without payment by the state or municipality of any money consideration, said real estate to be used for a specific purpose, and said real estate has not been used for the specific purpose for which it was conveyed, for a period of five years from the date of the original deed, or for a period of five years next preceding the

time of the filing of the action herein provided for, it shall be lawful for the donor or donors, or their successors in interest, to institute an action in state district court of the county in which said real estate is situate, against the state of New Mexico or said municipality, for the recovery of said real estate by said donors or their successors in interest, or for the cancellation of said deed or deeds whereby the state or municipality took title, and if the court shall determine that said real estate has not been used for the specific purpose for which it was donated as hereinbefore provided, it shall render judgment decreeing ownership of said real estate in the donors or their successors in interest, or for cancellation of the deeds to said state or municipality."

No question was raised in the district court or in this court, as to whether this statute has application to conveyances made prior to its enactment, in that it runs counter to the contract clause of the Constitution of the United States; and the question is not decided. We will assume that the statute applies to the deed from the Renehans to the city, if within its purview.

The following are uncontroverted, or admitted facts.

The title to certain lands, which included that in controversy, was claimed by the decedent; but he had no deed from the City of Santa Fe, which was created trustee under an act of Congress of 1900, 31 U.S. Sts. at Large, pp. 72, 73, for those claiming property within the limits of Santa Fe under color of title for ten years, with authority to convey it to such claimants. Such deed was necessary to complete Renehan's title. The evidence of color of title in decedent is vague and uncertain; but by an agreement between the city and decedent, the city agreed to give him a trustee's deed to the larger tract claimed, with the understanding that he would quiet his title thereto after he received the trustee's deed, and then convey back to the city the land in controversy, which the city had agreed with the United States Forest Service to convey to it for the purpose stated. This agreement was carried out by all parties and seems not to be questioned here. The substance of the material evidence on the question of Renehan's title is as follows:

The following correspondence and minutes of the Santa Fe City Council were introduced in evidence by stipulation of the parties:

"218 Post Office Building
Albuquerque, New Mexico,
October 28, 1939

Mr. C. R. McIntosh
City Attorney
Santa Fe, New Mexico

Dear Mr. McIntosh:

In accordance with our conversation of yesterday, I enclose a copy of the plat show-

ing various conflicts in the Santa Fe City Grant. The tract which the City has proposed to convey to the Government for a Forest ranger station and warehouse is also shown thereon.

Anything you can do to iron this matter out will be much appreciated.

Very sincerely yours,

E. S. French,

Regional Law Officer"

Enclosure

"218 Post Office Building

Albuquerque, New Mexico

November 21, 1939

Mr. C. R. McIntosh

City Attorney

Santa Fe, New Mexico

Dear Mr. McIntosh:

Reference is made to my recent conversation with you and my letter of October 28, with which I enclosed a copy of plat showing various grant conflicts in the City of Santa Fe Grant.

We have now had the proposed Forest Service ranger station and warehouse site surveyed and from the attached plat such site apparently does not conflict with the Salvador Gonzales Grant but does conflict with the Roque Lovato Grant. The latter Grant, as you will recall from copy of decree of the Court of Private Land Claims of April 18, 1894 of which I gave you a copy, was rejected. However, as I gathered from discussion with you, the abstracter, and others in Santa Fe, the conflict with the Roque Lovato Grant may constitute a cloud.

We would be glad to do anything we can to assist in working the matter out and hope that the City can in the near future make the site available. We do not at this time have any funds available for obligations even for abstracting purposes. Ordinarily, in donation cases, the Government can spend nominal sums for abstracting, and if the City can procure and loan us an abstract of the land, including the adverse titles, we could have a photostatic copy made which we are hopeful would be acceptable in Washington. As I told you, the estimate made by the Hutchinson Abstract Company for a complete abstract is from $230 to $250. The Forest Service would not be able to assume any such abstracting costs. However, if you are able to get quitclaims from the adverse owners, it may be that you can also borrow their abstract and therefore the only expense involved will be a nominal one for bringing the title up to date.

I would very much appreciate anything you can do to expedite the matter.

Very sincerely yours,

E. S. French,

Regional Law Officer"

"April 6, 1940

Mr. E. S. French
Regional Law Office
U. S. Forest Service
218 P. O. Building
Albuquerque, New Mexico

Dear Mr. French:

With reference to the acquisition of a site for the proposed forest service ranger station and warehouse at Santa Fe, I beg to advise that I have a number of conferences with Mrs. Renehan's attorney, and the proposition has simmered down to approximately the following situation.

Mrs. Renehan has no city deed to that portion of the area she claims, and, of course, can not sell any of this property and give a good title without first obtaining a city deed. She has a prospect of selling some of the land, and of course, is anxious to obtain the city deed so that the title will be in proper shape, and I believe that a satisfactory arrangement could be worked out whereby the city could give her a deed to that portion of land she claims, upon condition that she, in turn, deed to the city a sufficient area to comply with your requirements.

It appears, however, that the site which you have picked is the identical site for which she has a prospective sale, and this, of course, is blocking the transaction at the present time. I believe, however, that if an adjoining piece of ground in the immediate area would serve your purpose just as well, we could work out with Mrs. Renehan a satisfactory arrangement to acquire the necessary land for your purpose. Mr. Greer, who represents Mrs. Renehan, will probably write you concerning this matter in the next few days, and I would appreciate hearing from you concerning same at your earliest convenience.

Very truly yours,

CRM-b"

"218 Post Office Building
Albuquerque, New Mexico

April 22, 1940

C. R. McIntosh, Esq.
Attorney at Law
Santa Fe, New Mexico .

Dear Mr. McIntosh:

Upon my return to Albuquerque, I have your letter of April 6 in reference to the matter of a proposed donation by the City of Santa Fe of a ranger station and an administrative site there.

Thank you for advising me as to the complications which have arisen. The Regional Forester has requested the Forest Supervisor at Santa Fe to look into the matter of another site.

If another satisfactory site is found and agreed upon, I will be glad to be of any

assistance I can in connection with the title.

Thanking you for your cooperation in this matter,

Very sincerely yours,
E. S. French,
Regional Law Officer"

"City Attorney McIntosh presented to the Council the matter of procuring a site for the Forest Service Ranger warehouse and it was moved by Alderman Carmody, seconded by Alderman Quintana, and carried unanimously, that the City Attorney be authorized to proceed with arrangements with Mrs. Renehan and the Forest Service for the acquisition of such a site. (Minutes of City Council dated April 10, 1940)

"City Attorney reported that the Forest Service had selected a site for the location of a warehouse and that an agreement had been reached with Mrs. Renehan, in connection with the same. A City Deed had been prepared reserving the right for existing road and water pipe lines across said tract and the City Attorney recommended that the same be executed with the provision. Alderman Carmody moved that the City Council go on record as approving the action of the City Attorney in reserving such right-of-way. The Motion was seconded by Alderman Larragoite, and upon being put to vote carried unanimously.

"It was moved by Alderman Ormsbee, seconded by Alderman Carmody and carried unanimously, that the Mayor and the City Clerk be authorized to execute a city deed to Mrs. Renehan upon the following described property, subject to the reservation as recommended by the City Attorney." Minutes of Santa Fe City Council, dated May 22nd, 1940.

It was stipulated that the description following these minutes covered a larger tract of land, which included the tract in controversy. Thereafter the city conveyed to Renehan by trustee's deed a large tract of land (this included the land in controversy) to which Renehan quieted his title in the district court, and then deeded back to the city the land in suit. The city conveyed this land to the United States Forest Service, which subsequently reconveyed it to the city, claiming that the conveyance made by the city was without authority.

C. R. McIntosh testified in substance as follows:

"I was city attorney of the City of Santa Fe in the years of 1939 and 1940, and had some negotiations with Mr. Herbert Greer as attorney for Mr. Renehan. I had had some dealings with the United States Forest Service through Mr. French, one of its agents, or its attorney. These dealings began late in 1939, or the first part of 1940.

"An arrangement was worked out to obtain title to the tract of land which the

Forest Service had selected as desirable to them for the site for this warehouse. The Forest Service thought this land belonged to the City but in the course of negotiations it developed that some of the Renehan family made claim to it, which constituted a cloud on the title. The Forest Service insisted that the matter of the Renehan claim would have to be cleared up. Its agent advised me they had $40,000 to spend for constructing and establishing the warehouse, but it could not be used for acquiring a site. (Here it was admitted by the parties that the City was seeking to acquire this land for the purpose of donating it to the United States on which to build a Forest Service Warehouse. In fact the City did convey the land to the Forest Service of the Federal Government to be used for the warehouse after title thereto was acquired by it). I worked out a deal along these lines. An abstract of title was handed me in which the Renehan title appeared indefinite as to boundaries, but sufficient to show there was a substantial claim in Renehan. It was agreed that a survey of the property claimed by Renehan would be made, and that he would then make application for a city deed. The land which the Forest Service desired, or had selected for their site, was included in this survey area. It was then agreed that if no other claimants to the land appeared, that the City would execute a city deed to Renehan, based upon such survey; that Renehan would then sue to quiet title in him to the real estate covered by the survey, and upon successful conclusion of the suit to quiet title, he would deed to the City the area which had been selected by the Forest Service as a cite for this warehouse, so that the City could in turn deed it to the Forest Service for that purpose. (At this point the warranty deed from Renehan and wife to the City of Santa Fé dated May 22, 1940 was introduced in evidence).

"I examined the abstract and could determine to a certain extent the ownership of the land. I don't recall that I determined the location of the Renehan land but I did determine that there was a basis shown by the abstract for the Renehan claim, which entitled them to a city deed to a tract of land in that area; that it appeared that Renehan was entitled to a city deed for at least that tract of land which was shown or described by the McClusky survey, and which larger tract would include * * * the tract which the Forest Service wanted." (This is the tract in suit).

"A city deed was prepared conveying to Renehan the larger tract, to which I had determined he had color of title, and the five-acre tract mentioned was a part of it. The larger tract was the same land described in the minutes of the City of May 22, 1940. My recollection is that the deed from Renehan and wife to the City was delivered to me by Neil Renehan, conveying

this land which we had previously agreed was to be deeded to the City for the purpose of providing the Forest Service with a site for their warehouse. I do not have any recollection of paying Mr. Renehan any money. In the ordinary course of business I would not have been the one to pay the consideration, if any was paid for the land. To my knowledge no money was paid for the deed."

Cross-examination:

"It was my opinion that the abstract which was submitted, sufficiently showed that Renehan had a claim to some land in that area within the City Grant, to which, upon establishment of definite boundaries, he would be entitled to receive a city deed (Trustee's deed) under the act of Congress of 1900. After the City acquired the deed from Renehan, it executed a deed to the United States Forest Service, on October 22, 1940. The deed contained this language:

" 'This deed is being executed for the purpose of vesting title in the grantee for use as a site for a Forest Service warehouse and should the same ever cease to be used for the United States Forest Service, title to the said property shall revert to the grantor hereof.' " (A deed was then introduced in evidence, in which the Forest Service reconveyed this same property to the city.)

It was stipulated that the records of the city did not show the payment to the city of the $10.00 consideration named in the deed, or any other sum.

It was also stipulated that the claims against the estate of Neil P. Renehan amounted to $9517.36; that the cost of closing the estate would be $500; that the receipts from the estate were $8719.37, and the unpaid balance due creditors was $1297.99, that the property is by nature unimproved suburban real estate, is unincumbered and of the value of $1500.00.

From this testimony, admissions and stipulations, there can be deduced only the following evidentiary facts:

In 1939 or 1940 the United States Forest Service desired to own the five acre tract of land in controversy, on which to build a warehouse to be used in connection with its business. The City of Santa Fe was anxious to secure and donate this real estate to the Forest Service, and the Santa Fe city attorney was instructed by the city to look into the title, and in doing so discovered that Mrs. Marietta Renehan had some indefinite claim to this and surrounding property. At the suggestion of the City Council, the city attorney secured an abstract and made further investigations into the title. A survey was made, and it was determined that probably the five acre tract was a part of the property claimed by Mrs. Marietta

Renehan. Negotiations then were commenced between the city attorney and Mrs. Renehan to secure title to this property for the Forest Service. The city attorney found the claim of Mrs. Renehan very indefinite, but concluded there was enough color of title to support her claim, provided at least that there was no contest. An agreement was then entered into between the city and Mrs. Renehan, whereby it was agreed in substance that the city would execute to Mrs. Renehan a trustee's deed as authorized by the act of Congress heretofore mentioned, conveying the property to her *with the understanding that in consideration thereof* she would quiet title in herself and would thereafter convey the five acre tract in question to the city, so that the city could convey it to the proper representative of the Forest Service.

At the time of the negotiations mentioned, the Renehan claim was in Marietta P. Renehan, the mother of the deceased, to whom the city conveyed the larger tract, which included the land in suit, by trustee's deed dated July 10, 1940. She conveyed the same property by quitclaim deed to the deceased, her son, on September 21, 1940, who thereafter took his mother's place in the transaction. Neil P. Renehan then brought suit to quiet title in himself to the entire tract, and a decree was entered establishing title in him thereto, excepting some acreage owned by John J. Dempsey and

Santa Fe Estates, Inc. Thereafter, to carry out the agreement with the city, Renehan conveyed to it by warranty deed dated July 21, 1941, the five acre tract in question, and the city thereafter conveyed it by quitclaim deed to the United States on October 27, 1941. The United States subsequently reconveyed it to the City of Santa Fe, which now owns the record title thereto.

We are of the opinion that finding of fact No. 3 is not supported by any substantial evidence and should be cancelled. The statute under which appellant claims a reverter to decedent has reference to conveyances of property to be used for state or municipal purposes, the title to remain in the state or municipality. The Renehans knew the city intended to dispose of this property to the Forest Service, and there was no intention on the part of either of the parties that the property would be used for any specific municipal purpose; indeed the facts belie this.

There was never any intention at any time on the part of the Renehan claimants to donate this property to the city; or at least there is no evidence to support such contention. The purpose behind these transactions is stated in the correspondence between Mr. McIntosh, city attorney representing the city, and Mr. French, representing the Forest Service, together with the minutes of the Santa Fe city council meetings, copied herein. From one of the let-

ters from the city attorney we quote as follows:

"Mrs. Renehan has no city deed to that portion of the area she claims, and, of course, can not sell any of this property and give a good title without first obtaining a city deed. She has a prospect of selling some of the land and, of course, is anxious to obtain the city deed so that the title will be in proper shape, and I believe that a satisfactory arrangement could be worked out whereby the city could give her a deed to that portion of land she claims, upon condition that she, in turn, deed to the city a sufficient area to comply with your requirements."

Mrs. Renehan and her successor, the decedent, had a doubtful title, and in any event an unmerchantable one; unless she could secure a trustee's deed from the city, and quiet her title. To secure such deed to the larger tract of one hundred acres from the city, she gave in consideration therefor this five acre tract of land, and that is all we can make of the evidence. Neither of the Renehans was interested in the desire of the Forest Service to secure title to the five acre tract. They did not donate it to be used for any purpose or at all. They conveyed it to the city by warranty deed which recited a sufficient consideration, and it conveyed the Renehan title.

The following language contained in the trial court's finding of fact No. 3 is cancelled, to-wit:

"That said instrument was recorded in Book 22, page 213 of the Records of the Clerk of Santa Fe County, New Mexico, and that said conveyance was made to said municipality as a gift or donation and without payment by said municipality of any money consideration, and that said real estate was to be used for a specific purpose, to-wit, a site for a Forest Service warehouse and was conveyed for said specific purpose."

The remaining findings show title in appellant City of Santa Fe.

The judgment is reversed and cause remanded, with instructions to the district court to set aside its judgment and enter judgment for appellant City of Santa Fe, and it is so ordered.

BRICE, LUJAN, and McGHEE, JJ., concur.

SADLER, J., not participating.